IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

MICHAEL A. SNIDER,        )
                                )
       Petitioner,        )
                                )
    v.                       )       CV 114-111
                                )
WILLIAM DANFORTH, Warden,    )
                                )
       Respondent.     )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Telfair State Prison in Helena, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

This case challenges the validity of Petitioner's convictions for one count of aggravated child molestation and four counts of child molestation, for which he was indicted on May 17, 2006 by a Columbia County grand jury. (Doc. no. 8-4, pp. 49-52.) The Georgia Court of Appeals provided the following description of facts underlying the offenses based on the evidence offered against Petitioner at trial:

> [B]ased on the in-court testimony of the child victims, between April 2004 and February 2005 [Petitioner] often placed his mouth on the private parts of ten-to-eleven-year-old male Che. T., repeatedly fondled the private

parts of Che. T., had Che. T. seven times fondle [Petitioner's] private parts, fondled six-year-old male P.H.'s private parts, and fondled twelve-year-old male Cha. T.'s private parts (P.H. was the cousin of Che. T. and Cha. T., who were brothers). These victims testified that [Petitioner] performed these acts when each respective child was startled from sleep while sleeping overnight in [Petitioner's] bed in his trailer home near a marina. [Petitioner] threatened to kill Che. T. if he ever told anyone of the incidents.

Although the last to experience molestation by [Petitioner], P.H. was the first to disclose his encounter. Immediately after the encounter, he had someone call his parents to come pick him up because he was scared. He told his mother of the molestation by [Petitioner] some days thereafter when she inquired as to whether anyone had ever touched him inappropriately. Hearing of their cousin P.H.'s disclosure, Che. T. and Cha. T. told their stepfather of their sexual encounters with [Petitioner]. Although P.H. freely repeated this disclosure to the forensic interviewer . . . at the local child advocacy center (explaining that was the reason he had his parents come pick him up), Che. T. and Cha. T. both changed their respective stories when interviewed at the center, claiming no inappropriate conduct occurred. After repeating to his stepfather his initial disclosure of molestation, Che. T. was then re-interviewed by a trained child forensic interviewer of the sheriff's office, at which time Che. T. told of the molestation. Che. T. stated that he had withheld disclosing the molestation to the child advocacy interviewer because he was afraid Petitioner would make good on his threat to hurt him. Although also re-interviewed by this same forensic interviewer of the sheriff's office, Cha. T. (a special education student) maintained that no sexual encounter occurred.

Snider v. State, 695 S.E.2d 383, 386 (Ga. Ct. App. 2010).

At trial, Petitioner was represented by Hugh M. Hadden and Kate Mason of the

Augusta Judicial Circuit Public Defender's Office. (Doc. no. 8-4, p. 62.) On September 20,

2006, a jury found Petitioner guilty of all five counts in the indictment, and the trial court

sentenced Petitioner, as a recidivist, to life without parole on the count of aggravated child

molestation and to an additional, concurrent life sentence for each of the four counts of child

molestation. (Id. at 52, 54.) Petitioner moved for a new trial on October 13, 2006 upon

which a hearing was held on May 5, 2009 where Petitioner was represented by new counsel,

David S. Klein. (Doc. no. 8-7, pp. 61-77.) The motion was denied the same day. (Doc. no. 8-4, p 57.)

David S. Klein, who also represented Petitioner on direct appeal, raised seven enumerations of error:

(1)   The trial court erred in admitting child hearsay that did not contain sufficient indicia of reliability without conducting an O.C.G.A. § 24-3-16 evidentiary hearing.

(2)   The admission of child hearsay by the trial court violated Petitioner's Sixth Amendment right to confrontation.

(3)   The trial court erred in granting the State's motion to exclude evidence of a prior molestation by someone other than Petitioner.

(4)   The trial court erred in denying Petitioner's motion to exclude evidence of Petitioner's prior convictions.

(5)   The trial court erred in denying Petitioner's motion to exclude evidence of similar transactions.

(6)   The trial court erred in allowing the State to introduce evidence of prior consistent statements of the victims.

(7)   The trial court erred in not charging the jury on prior consistent statements, after admitting prior consistent statements into evidence.

(Doc. no. 10.)   On May 12, 2010, the Georgia Court of Appeals rejected Petitioner's contentions and affirmed his convictions, and the Georgia Supreme Court denied a writ of certiorari on October 4, 2010. See Snider, 695 S.E.2d at 391.

Petitioner filed a state habeas corpus petition *pro se* on August 12, 2011 in Lowndes County alleging similar grounds for relief to those in his direct appeal but adding ineffective assistance of trial and appellate counsel claims:

(1)   The trial court erred in admitting child hearsay that did not contain

sufficient indicia of reliability without conducting an O.C.G.A. § 24-3-16 evidentiary hearing.

(2) The admission of child hearsay by the trial court violated Petitioner's Sixth Amendment right to confrontation.

(3) The trial court erred in granting the State's motion to exclude evidence of a prior molestation by someone other than Petitioner.

(4) The trial court erred in denying Petitioner's motion to exclude evidence of Petitioner's prior convictions.

(5) The trial court erred in denying Petitioner's motion to exclude evidence of similar transactions.

(6) The trial court erred in allowing the State to introduce evidence of prior consistent statements of the victims.

(7) The trial court erred in not charging the jury on prior consistent statements, after admitting prior consistent statements into evidence.

(8) Petitioner received ineffective assistance of trial counsel.

    a) Petitioner's trial counsel failed to object to the admission of similar transaction evidence.

    b) Petitioner's trial counsel failed to cross-examine two witnesses that testified as to similar transactions.

(9) Petitioner received ineffective assistance of appellate counsel.

    a) Petitioner's appellate counsel failed to raise the arguments in Ground Eight on appeal.

    b) Petitioner's appellate counsel failed to file a motion for reconsideration of the appellate court's decision.

(Doc. no. 8-1, pp. 34-101.) Evidentiary hearings were conducted on April 12, 2012, and David S. Klein, Petitioner's appellate counsel, testified at the hearing. (Doc. no. 8-4, pp. 10-30.) The state habeas court denied relief in a final order filed on September 9, 2013. (Doc.

no. 8-2.)

On September 25, 2013, Petitioner filed for a certificate of probable cause to appeal with the Georgia Supreme Court, seeking review of the state habeas court's decision. See SUPREME CT. GA., (June 2, 2015), http://www.gasupreme.us/docket_search/results_one_record.php?caseNumber=S14H0133. The Georgia Supreme Court denied the certificate on April 22, 2014. (Doc. no. 8-3.)

Petitioner then timely filed the above-captioned § 2254 petition *pro se*. (Doc. no. 1.) In the petition, Petitioner raises the same grounds for relief raised in his state habeas petition:

(1) The trial court erred in admitting child hearsay that was unreliable under O.C.G.A. § 24-3-16 and not holding an evidentiary hearing to determine the reliability of the hearsay.

(2) The admission of child hearsay by the trial court violated Petitioner's Sixth Amendment right to confront the witnesses against him.

(3) The trial court erred in granting the State's motion to exclude evidence of molestation by someone other than Petitioner.

(4) The trial court erred in denying Petitioner's motion to exclude evidence of Petitioner's prior convictions.

(5) The trial court abused its discretion in denying Petitioner's motion to exclude evidence of similar transactions.

(6) The trial court erred in allowing the State to introduce evidence of prior consistent statements of the victims.

(7) After admitting prior consistent statements, the trial court erred in charging the jury on prior inconsistent statements but not charging the jury on prior consistent statements.

(8) Petitioner received ineffective assistance of trial counsel.

    a) Petitioner's trial counsel failed to object to the admission of similar transaction evidence.

5

       b) Petitioner's trial counsel failed to cross-examine two witnesses that testified as to similar transactions.

(9) Petitioner received ineffective assistance of appellate counsel.

       a) Petitioner's appellate counsel failed to raise the arguments in Ground Eight on appeal.

       b) Petitioner's appellate counsel failed to file a motion for reconsideration of the appellate court's decision.

(See generally doc. no. 1, pp. 6-20; doc. no. 2.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given

the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quoting

Richter, 562 U.S. at 102; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation

omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the

difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1)

as follows:

> A state-court decision is contrary to this Court's clearly established precedents
> if it applies a rule that contradicts the governing law set forth in our cases, or if
> it confronts a set of facts that is materially indistinguishable from a decision of
> this Court but reaches a different result. A state-court decision involves an
> unreasonable application of this Court's clearly established precedents if the
> state court applies this Court's precedents to the facts in an objectively
> unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate

that a state court's decision is "incorrect or erroneous"; only a showing that the decision was

"objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510,

520-21 (2003); see also Richter, 562 U.S. at 103 (petitioner must show the state court's

ruling "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."). A

showing that the state court's determination was unreasonable is a substantially higher

threshold than whether it was correct. Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325

(11th Cir. 2013) cert. denied, 133 S. Ct. 2742 (2013). In addition, "review under §

2254(d)(1) is limited to the record that was before the state court that adjudicated the claim

on the merits." Cullen, 131 S. Ct. at 1398.

Moreover, under AEDPA's highly deferential standard of review for state court

factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 301 (2010) (explaining that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (internal citation and punctuation omitted). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.") (internal quotation marks omitted).

## III. DISCUSSION

### A. Petitioner Procedurally Defaulted the Claims in Ground Eight That He Received Ineffective Assistance of Trial Counsel.

#### 1. A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state

courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1353-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal issues.'" Preston v. Sec'y, Florida Dep't of Corr., No. 12-14706, 2015 WL 1926218, at *7 (11th Cir. 2015) (quoting Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir.2007). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Alabama Dep't of Corr., 697 F.3d 1320, 1335

(11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 131 S. Ct. 1120, 1125 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999). To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." See Bailey, 172

at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal. <u>See</u> <u>Devier v. Zant</u>, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); <u>see also</u> <u>Black v. Hardin</u>, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."); <u>see also</u> <u>Waldrip v. Head</u>, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default[.]"). In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

### 2. Petitioner's Claims of Ineffective Trial Counsel in Ground Eight Are Procedurally Defaulted Under O.C.GA § 9-14-48(d).

In Ground Eight, Petitioner argues that trial counsel was ineffective in failing to object to the introduction of similar transaction evidence and in failing to cross-examine two

witnesses that testified as to similar transactions. Respondent argues these claims are procedurally defaulted, as found by the state habeas court under O.C.G.A § 9-14-48(d), because they were not raised on direct appeal. (Doc. no. 7-1, p. 9.)

The state habeas court found that these claims were procedurally barred under O.C.GA § 9-14-48(d) because Petitioner did not raise these ineffective assistance of trial counsel claims on direct appeal and alleged neither prejudice nor cause for not doing so. See Gaither v. Gibby, 475 S.E.2d 603, 604 (Ga. 1996); doc. no. 8-2, p. 10. Because the state court clearly relied on O.C.GA § 9-14-48(d) and applied it properly when finding these claims to be procedurally barred, the Court must defer to this ruling that was based on independent and adequate state law grounds. See Boyd, 697 F.3d at 1336. Accordingly, the Court hereby finds that Petitioner procedurally defaulted both claims in Ground Eight of the federal habeas petition.

### 3. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claims in Ground Eight, and the Miscarriage of Justice Exception Does Not Apply.

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  For example, procedural default does not preclude federal habeas review when (1) the claim of ineffective assistance of trial counsel is a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."  Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013); Martinez v. Ryan, 132 S. Ct. 1309, 1318-20 (2012).

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice."  Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime.  Murray, 477 U.S. at 496.  Petitioner does not submit any evidence that he is probably innocent of the crimes for which has been convicted.  To the contrary, the weight of the evidence supports his conviction.

Petitioner has presented no justification for failing to raise these claims in his state habeas proceedings, let alone something external to him that cannot be fairly attributed to him.  In addition, Petitioner can show neither prejudice resulting from the default nor that the claims are substantial as explained in the section addressing Petitioner's ineffective

13

assistance of appellate counsel claims *infra* § C.2.a. Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default of the claims in Ground Eight. Likewise Petitioner has not shown that a miscarriage of justice will occur if the Court does not consider these claims. Accordingly, Petitioner's claims in Ground Eight in the instant § 2254 petition have been defaulted and provides no basis for federal habeas relief.

**B.** **Petitioner Is Not Entitled to Federal Habeas Relief Based on His Claims in Grounds One, Four, Five, Six, and Seven Because They Are State Law Claims.**

A federal habeas court may entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the United States Constitution, a treaty, or the laws of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68; Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1326 (11th Cir. 2010) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). Thus, a federal court is not concerned with a state's interpretation of its own laws and rules unless the violations raise federal constitutional problems; such matters are of state concern. McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992). Stated otherwise, a federal habeas court is not a "'super' state supreme court" available to grant relief every time it believes a state

court erred.  <u>Shaw v. Boney</u>, 695 F.2d 528, 530 (11th Cir. 1983) (quoting <u>Meyer v. Estelle</u>,

621 F.2d 769, 771 (5th Cir. 1980)[1]).

## 1. Ground One, Challenging the Trial Court's Admission of Child Hearsay Under O.C.G.A § 24-3-16, Is a State Law Claim Not Cognizable in a Federal Habeas Proceeding.

In Ground One, Petitioner contends that the child hearsay submitted into evidence

was not sufficiently reliable under O.C.G.A § 24-3-16 for admission in his trial.  (Doc. no. 2,

pp. 14-34.)  Petitioner further claims that the trial court erred in not holding a hearing under

<u>Gregg v. State</u>, 411 S.E. 2d 65 (Ga. 1991) in assessing the reliability of the statements.

Petitioner contends six instances of hearsay should not have been admitted: (1) Che. T. 's

interview with Kimberly Lee at the child advocacy center on February 1, 2005, (2) Cha. T.'s

interview with Kimberly Lee on the same day, (3) P.H.'s interview with Amy Abbott at the

child advocacy center, (4) P.H.'s statements to his mother, (5) Che. T.'s interview with

Stephanie Carani at the sheriff's office on February 14, 2005, and (6) Cha. T.'s interview

with Stephanie Carani on the same day.  (Doc. no. 2, pp. 14-34.)  The state habeas court

found that this issue was decided adversely to Petitioner on appeal and could not be

relitigated absent an intervening change in the facts or law.  (Doc. no. 8-2, p. 12.)  The state

appellate court found no error under the Georgia child hearsay statute as to these claims.

<u>Snider</u>, 695 S.E.2d at 386-89.

Federal courts do not review whether the admission of evidence in a state criminal

trial conformed with state law requirements.  <u>Futch v. Dugger</u>, 874 F.2d 1483, 1487 (11th

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Cir. 1989). Thus, Petitioner has not stated a claim that is cognizable in a federal habeas proceeding in Ground One because it is a state law evidentiary claim and cannot form the basis for federal habeas corpus relief. See Estelle, 502 U.S. at 68-69 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Petitioner has also not alleged that the admission of this hearsay rendered his trial fundamentally unfair such that it violated due process. See id.; Boykins v. Wainright, 737 F.2d 1539, 1544 (11th Cir. 1984); Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998) ("A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'") Even if Petitioner were to bring such a claim, it is procedurally defaulted. Petitioner failed to raise any such federal claim at trial or on appeal, and a Georgia habeas court would find it barred under O.C.G.A. § 9-14-48(d). Snowden, 135 F.3d at 737. Nor has Petitioner demonstrated the cause and prejudice necessary to overcome the procedural default of this claim, or put forth any evidence sufficient to trigger the fundamental miscarriage of justice exception.

Even if Petitioner alleged that this purported violation rose to the level of a constitutional violation, which he does not, such a claim would be meritless. First, a hearing is not required under Georgia law in determining the admissibility of child hearsay under Reynolds v. State, 363 S.E.2d 249, 250 (Ga. 1988), and Petitioner concedes as much. (Doc. no. 2, p. 22.) Petitioner also complains of two instances of child hearsay, interviews of Che. T. and Cha. T. at the child advocacy center, that were introduced by his own trial counsel and were actually beneficial to his case because the children denied being molested. (Doc. no. 8-5, pp. 23-24.) As to these instances of hearsay, no fundamental unfairness resulted from

their introduction. Petitioner also complains of interviews of Che. T. and Cha. T. at the sheriff's department as being unreliable under O.C.G.A § 24-3-16 which the trial court refused to admit under this statute. (Doc. no. 8-3, pp. 83-84.)[2] As the hearsay was not admitted under O.C.G.A § 24-3-16 but rather as a prior consistent statement as discussed *infra* B.3., there was no fundamental unfairness, and Petitioner's claims as to these instances of hearsay are without merit.

The only instances of hearsay remaining which were admitted under the child hearsay statute and that were detrimental to Petitioner's defense are statements by P.H. to his mother and to Amy Abbott. (Doc. no. 2, pp. 19-21.) O.C.G.A. § 24–3–16 provides that "a statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." Under Gregg, the factors that may be considered in determining if the statements have sufficient indicia of reliability are (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or

---

[2]Petitioner primarily complains that the statements were unreliable because the interviews were conducted at the sheriff's department for a second time in contravention of the child advocacy center's policy. (Doc. no. 2, pp. 25-28.) The violation of this policy is irrelevant, however, as the statements were properly admitted under Georgia law as prior consistent statements as explained *supra* § B.3.

alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child. Gregg v. State, 411 S.E.2d 65, 68 (Ga. Ct. App. 1991).

The state appellate court found that P.H.'s statements to his mom and to Amy Abbott contained sufficient indicia of reliability under Gregg. As to these statements, the state appellate court found there was no evidence of coaching or coercion, the trial court had the opportunity to observe the child's demeanor at trial and on the video tape, the atmosphere where the statements were made suggested reliability, and the statements were largely consistent with each other. Snider, 695 S.E.2d at 387-88. This finding is consistent with the record which suggests the statements were entirely voluntary, consistent, and made in front of neutral parties. Because the Court can discern no constitutional error in the appellate court's ruling upholding the admission of P.H.'s statements as being sufficiently reliable, the admission of these statements did lead to fundamental unfairness in Petitioner's trial.

Accordingly, Petitioner's claims in Ground One are state law claims that do not provide a basis for federal habeas relief. Even if Petitioner alleged federal claims, which he does not, Petitioner has failed to establish that the appellate court's decision upholding the trial court's admission of child hearsay was "based on an unreasonable determination of the facts in light of the evidence presented" at the state proceeding. 28 U.S.C. § 2254(d)(2). Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the appellate court's factual determinations. 28 U.S.C. § 2254(e)(1). Nor

did the admission of evidence render his trial fundamentally unfair, as it met all requirements for admission under <u>Gregg</u>. Furthermore, any federal claim is unexhausted and procedurally defaulted. In sum, Petitioner is not entitled to relief on Ground One of his petition.

    **2.    Grounds Four and Five, Challenging the Introduction of Evidence of Petitioner's Prior Child Molestation Convictions, Are State Law Claims Not Cognizable in a Federal Habeas Proceeding.**

In Ground Four, Petitioner alleges that the trial court erred in denying his motion to exclude evidence of a prior conviction for child molestation for the purposes of impeachment. (Doc. no. 2, pp. 53-60.) Petitioner claims that such evidence was inadmissible under O.C.G.A. § 24-9-84.1 because its probative value did not substantially outweigh the unfair prejudice to Petitioner. (<u>Id.</u> at 54-55.) In Ground Five, Petitioner argues that the trial court erred in admitting testimony of two prior molestation victims as similar transaction evidence because the evidence was not disclosed until the day of trial and the evidence was not admitted for an appropriate purpose. (<u>Id.</u> at 61-70.) The state habeas court found that the impeachment evidence issue was decided adversely to Petitioner on appeal and could not be relitigated absent an intervening change in the facts or law. (Doc. no. 8-2, p. 12.) The state appellate court found no error as the trial court never ruled on whether the evidence could be used for impeachment, instead deferring the ruling and later admitting the evidence as a similar transaction rather than for impeachment purposes. <u>Snider</u>, 695 S.E.2d at 389-90. As to the similar transaction evidence, the state habeas court found the evidence was properly admitted under Georgia law. (Doc. no. 8-2, p. 10.)

Because Petitioner's claims are state law evidentiary claims, they cannot form the basis for federal habeas relief. <u>See</u> <u>Estelle</u>, 502 U.S. at 68-69. Petitioner has also not alleged

that the admission of this hearsay rendered his trial fundamentally unfair such that it violated due process. See id.; Boykins, 737 F.2d 1539, 1544 (11th Cir. 1984). Even if Petitioner were to bring such claims, they are procedurally defaulted. Petitioner failed to raise any such federal constitutional claims at trial or on appeal, and a Georgia habeas court would find it barred under O.C.G.A. § 9-14-48(d). Snowden, 135 F.3d at 737. Nor has Petitioner demonstrated the cause and prejudice necessary to overcome the procedural default of such claims, or put forth any evidence sufficient to trigger the fundamental miscarriage of justice exception. Therefore, Petitioner's failure to properly bring such federal claims in state court has matured into a procedural default. Jones, 436 F.3d at 1304.

Furthermore, Petitioner's claims in Ground Four as to the impeachment evidence is meritless, and there was no fundamental unfairness resulting from the trial court's ruling. Petitioner alleges that evidence of prior molestations of two individuals was incorrectly introduced under O.C.G.A. § 24-9-84.1. The record shows that the evidence was not introduced under this statute for impeachment purposes; it was introduced as a similar transaction. (Doc. no. 8-4, pp. 86-88.) Indeed, Petitioner never testified at trial so the evidence was never introduced to impeach his testimony. Thus, Petitioner can claim no constitutional error on this ground such that his trial was fundamentally unfair.

As to Petitioner's claim in Ground Five that the similar transaction evidence was incorrectly admitted, there was no constitutional error rendering his trial fundamentally unfair. First, the record demonstrates that Petitioner had the ability to inspect and review the investigative file related to the similar transaction witnesses before trial, and no fundamental unfairness resulted from any such allegations that he did not have access to the evidence.

(Doc. no. 8-4, pp. 90-91.)[3]  Second, the state habeas court correctly found the testimony from the two similar transaction witnesses, who were victims of molestations in 1988 of which Petitioner was convicted,  met the three requirements under Georgia law because (1) the evidence was introduced for an appropriate purpose; (2) there was sufficient evidence that the accused committed the independent offenses; and (3) there was sufficient similarity between the independent offenses and the crime charged.  See Pareja v. State, 686 S.E.2d 232, 234 (Ga. 2009); Doc no. 8-2, p. 10.  Here, the testimony from the two witnesses was introduced to show bent of mind, an appropriate purpose under Georgia law.  See Thompson v. State, 370 S.E.2d 819, 820 (Ga. Ct. App. 1988).  In addition, the two witnesses attested to being molested by Petitioner in the prior incidents, and the prior molestations were remarkably similar to the crimes being tried.  (See doc. no. 8-6, pp. 62-69.)   Thus, testimony by the two witnesses met the three requirements under Georgia law, and no fundamental unfairness resulted from its introduction.

Accordingly, Petitioner's claims in Ground Four and Five are state law claims that do not provide a basis for federal habeas relief.  Even if Petitioner alleged federal claims, which he does not, Petitioner has failed to establish that the state court's decision upholding the trial court's admission of evidence of the prior molestations was "based on an unreasonable determination of the facts in light of the evidence presented" at the state proceeding.  28 U.S.C. § 2254(d)(2).  Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state court's factual determinations.  28 U.S.C.

---

[3] Petitioner also failed to bring any claim regarding the disclosure of the investigative file, and a Georgia habeas court would find it barred under O.C.G.A. § 9-14-48(d).  Thus, Petitioner has procedurally defaulted this claim.  (See doc. no 10, pp 25-26.)

§ 2254(e)(1).  Nor did the admission of evidence render his trial fundamentally unfair, as it met all requirements for admission under Georgia's similar transactions jurisprudence. Furthermore, any federal claim is unexhausted and procedurally defaulted.  In sum, Petitioner is not entitled to relief on Grounds Four and Five of his petition.

### 3. Grounds Six and Seven, Challenging the Admission and Jury Instructions Given Concerning Prior Consistent Statements, Are State Law Claims Not Cognizable in a Federal Habeas Proceeding.

In Ground Six, Petitioner challenges the admission of prior consistent statements made by Che. T. and Cha. T. in taped interviews at the sheriff's office.  (Doc. no. 2, pp. 71-75.)  In Ground Seven, Petitioner alleges that the trial court erred in not giving a jury instruction on those prior consistent statements.  (Id. at 76-82.)  The state habeas court found that these issues were decided adversely to Petitioner on appeal and could not be relitigated absent an intervening change in the facts or law.  (Doc. no. 8-2, p. 12.)  The state appellate court found no error as to the admission of the prior consistent statements because they met the prerequisites for admission, and Petitioner waived his right to challenge the statements by not objecting.  Snider, 695 S.E.2d at 388.  The state appellate court also found no error as to the jury instruction because no such instruction was required under Georgia law.  Id. at 390.

Because Petitioner's claims are state law claims, they cannot form the basis for federal habeas relief.  See Estelle, 502 U.S. at 68-69.  Petitioner has also not alleged that the admission of this hearsay rendered his trial fundamentally unfair such that it violated due process.  See id.; Boykins, 737 F.2d at 1544.  Even if Petitioner were to bring such claims, it is procedurally defaulted.  Petitioner failed to raise such federal constitutional claims at trial or on appeal, and a Georgia habeas court would find them barred under O.C.G.A. § 9-14-

48(d). Snowden, 135 F.3d at 737. Nor has Petitioner demonstrated the cause and prejudice necessary to overcome the procedural default of such claims, or put forth any evidence sufficient to trigger the fundamental miscarriage of justice exception. Therefore, Petitioner's failure to properly bring such federal claims in state court has matured into a procedural default. Jones, 436 F.3d at 1304.

Even if Petitioner alleged the prior consistent statements by Che. T. and Cha T. at the sheriff's office rendered his trial fundamentally unfair, such a claim is meritless. Under Georgia law, a witness' prior consistent statement is admissible where: (1) the veracity of a witness' trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination. Duggan v. State, 677 S.E.2d 92, 94 (Ga. 2009). A witness' veracity is placed in issue so as to permit the introduction of a prior consistent statement "if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination" and such improper influence or fabrication occurred after the prior consistent statement. Id. at 95.

The state appellate court found Petitioner had insinuated during cross-examination of Che. T. that the prosecutor had influenced his testimony just before trial. Snider, 695 S.E.2d at 388. Specifically, the record shows that Petitioner questioned Che. T. about a meeting with the prosecutor the Sunday before trial, alleging disclosure of Petitioner's prior convictions to influence Che. T.'s testimony against Petitioner. (Doc. no. 8-4, pp. 138-39.) Because the taped interview occurred before the alleged improper influence arose and the witness was available for cross-examination, the appellate court made no error in determining admission of the tape complied with Georgia law. See Duggan, 677 S.E.2d at

23

95. As to the taped interview of Cha. T. at the sheriff's office, he did not allege any abuse during this interview, and thus it would not have been a prior consistent statement with his in-court testimony or admitted on this basis. (See doc. no. 8-6, pp. 35-36.) In addition, Cha. T.'s denial of abuse at the sheriff's office would have only benefitted Petitioner's defense, and he cannot complain that introducing such evidence resulted in fundamental unfairness violating due process.

As to Petitioner's allegation that a jury instruction was required on the proper use of prior consistent statements, Petitioner has failed to carry his burden to show that the lack of a jury instruction rendered his trial fundamentally unfair. In order to demonstrate that a jury instruction amounted to a constitutional violation, a person must show that the defective "instruction by itself so infected the entire trial that the resulting conviction violates due process . . . ." Henderson v. Kibbe, 431 U.S. 145, 154, (1977). The state appellate court found that such an instruction was unneeded because all evidence in a trial is generally considered substantive evidence by the jury unless otherwise instructed, and prior consistent statements are admitted for their substance. Snider, 695 S.E.2d at 390; see Boyt v. State, 649 S.E.2d 589, 596 (Ga. Ct. App. 2007) abrogated by Stephens v. State, 716 S.E.2d 154 (Ga. 2011) (finding that a jury instruction on prior consistent statements should no longer be given except in unusual circumstances). Further, the state appellate court found that Petitioner did not request a charge on prior consistent statements and such a charge was not required on a collateral matter without a request. Snider, 695 S.E.2d at 390. Given that a jury instruction was not required in this case under Georgia law, the Court can discern no error such that his entire trial was infected resulting in a due process violation.

Accordingly, Petitioner's claims in Ground Six and Seven are state law claims that do not provide a basis for federal habeas relief. Even if Petitioner alleged federal claims, which he does not, Petitioner has failed to establish that the appellate court's decision regarding the prior consistent statements was "based on an unreasonable determination of the facts in light of the evidence presented" at the state proceeding. 28 U.S.C. § 2254(d)(2). Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state court's factual determinations. 28 U.S.C. § 2254(e)(1). Nor did the admission of the prior consistent statement evidence and lack of a jury instruction on that evidence render his trial fundamentally unfair, as the evidence met the requirements for admission and no jury instruction was required under Georgia law. Furthermore, any federal claim is unexhausted and procedurally defaulted. In sum, Petitioner is not entitled to relief on Grounds Six and Seven of his petition.

**C. Pursuant to AEDPA, This Court Defers to the State Court's Decision Denying Petitioner's Ineffective Appellate Counsel Claims in Ground Nine.**

**1. Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.**

Ineffective assistance of appellate counsel claims are subject to the same two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). Petitioner must show that counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at

688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . ."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise a frivolous argument on appeal.  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).  Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue.  Philmore, 575 F.3d at 1264.  Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985); see Brooks v. Comm'r, Alabama Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of

_Strickland_, the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." _Brooks_, 719 F.3d at 1300 (quoting _Strickland_, 466 U.S. at 694) (internal citation omitted). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." _Butcher v. United States_, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied _Strickland_ to the facts of his case in an objectively unreasonable manner." _Bell v. Cone_, 535 U.S. 685, 699 (2002); _see also_ _Cave v. Sec'y for the Dep't of Corr._, 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied _Strickland_ incorrectly." _Bell_, 535 U.S. 685 at 699. Moreover, because "[t]he standards created by _Strickland_ and § 2254(d) are both highly deferential, . . . when the two apply in tandem review is doubly so." _Richter_, 562 U.S. at 105 (quotation marks and citations omitted); _see also_ _Yarborough v. Gentry_, 540 U.S. 1, 4 (2003)

(review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Woods v. Donald, 135 S. Ct. 1372, 1376 (2015).

> **2.      The State Court's Application of Strickland to Ground Nine Was Not Objectively Unreasonable.**

Petitioner argues in Ground Nine of his § 2254 petition that his appellate counsel was ineffective because he failed to raise the arguments made in Ground Eight concerning ineffective assistance of trial counsel and failed to file a motion for reconsideration of the appellate court's decision. (See doc. nos. 1, 2.) The state habeas court found that Petitioner's ineffective assistance of appellate counsel claims lacked merit under Strickland. (Doc. no. 8-2, pp. 6-10.)

### a.   Failure to Raise Ineffective Assistance of Trial Counsel

First, Petitioner appears to argue that appellate counsel was ineffective for raising the claims in Ground Eight on appeal. The claims in Ground Eight relate to whether trial counsel was ineffective in not objecting to the similar transaction evidence and not cross-examining the similar transaction witnesses. The state habeas court found that Petitioner was not prejudiced under Strickland as to these claims, an adjudication on the merits that warrants the deferential standard of review prescribed by § 2254(d). See Blankenship v. Hall, 542 F.3d 1253, 1271 (11th Cir. 2008)

At the state habeas hearing, Petitioner's appellate counsel, David S. Klein, testified that he thoroughly reviewed the record and trial transcript and examined the most pertinent

issues in Petitioner's trial. (Doc. no. 8-4, pp. 11-12.) Mr. Klein testified that he thought it was better to narrow the issues to the strongest ones rather than bringing every possible issue at the appellate level. (<u>Id.</u> at 12.) He further testified that he discussed the claims he was bringing on appeal with Petitioner, and that he brought the most meritorious issues on appeal. (<u>Id.</u> at 13.) Mr. Klein also testified that he looked very hard for any claims of ineffective assistance of trial counsel but did not see any possible claims. (<u>Id.</u> at 15.) As to the similar transactions claim, Mr. Klein testified that there was a stronger issue of abuse by the trial court in introducing the evidence rather than an ineffective assistance of counsel claim in counsel not objecting to the evidence at trial. (<u>Id.</u> at 17.) Further, he testified that framing the claim directly rather than as an ineffective assistance claim was a strategic decision. (<u>Id.</u> at 29.)

The state habeas court explicitly found Petitioner had not shown that the similar transaction evidence was wrongly introduced. (Doc. no. 8-2, p. 9.) As there was no error in admitting this evidence, the state habeas court reasoned Petitioner was not prejudiced by his counsel's failure to object to the evidence. (<u>Id.</u>) As explained *supra* § B.2., the evidence was introduced to show bent of mind, an appropriate purpose under Georgia law. <u>See</u> <u>Thompson</u> 370 S.E.2d at 820. Further, the acts were remarkably similar to the crimes Petitioner was charged with, and the witness testimony was sufficient to identify Petitioner as the molester in the prior incidents. Thus, the state habeas court's decision was not an unreasonable application of <u>Strickland</u>, and the claim is without merit.

As to appellate counsel's failure to raise trial counsel's alleged ineffectiveness in not cross-examining two similar transaction witnesses, the state habeas court did not apply

Strickland unreasonably.  Although the state habeas court did not delve into the specifics of this claim, its decision is still entitled to deference under AEDPA.  See Blankenship, 542 F.3d at 1271.  Petitioner argues that trial counsel should have cross-examined one of the similar transaction witnesses because he indicated that he was molested in 1986, a period in which Petitioner was incarcerated.  (Doc. no. 2, p. 81.)  The specific passage Petitioner seems to be indicating reads as follows:

Q.  Okay.  About how old were you when you would ride the jet skis?

A.  Nine or ten.  I think I was ten.  It was '86.

(Doc. no. 8-6, p. 62.)  The witness then testified to an incident at some point where Petitioner molested him while riding a jet ski.  (Id.)

The witness seemed to be uncertain of the date as he could not remember his age, hardly surprising eighteen years after the fact.  In addition, the later incident of molestation at Petitioner's trailer testified to by the same witness occurred on May 20, 1988, as indicated in the state court indictment introduced into evidence to which Petitioner pleaded guilty.  (Doc. no. 8-6, pp. 171-75.)  Thus, the testimony is imprecise at best as to when the two incidences of molestation occurred, and the only definite date in the evidence for an incidence of molestation was in 1988.

Here, Petitioner was not prejudiced by trial counsel's failure to cross-examine the witness because there is no clear indication that the witness was attempting to testify that he was molested at the same time Petitioner was incarcerated in 1986.  Further, Petitioner has not carried his burden to show he was prejudiced by this testimony, producing no evidence that he was even incarcerated during this period or that he informed his lawyer that he was

incarcerated during this period.  See Bell, 535 U.S. at 699.  At most, cross-examination might have revealed that the witness was uncertain of the date he was molested almost two decades before.  Speculation that Petitioner's counsel might have elicited such testimony could hardly be deemed sufficient to undermine confidence in the outcome of Petitioner's case, particularly where the witness was only a similar transaction witness showing Petitioner's bent of mind, and Petitioner pleaded guily to molesting this witness in 1988.

Petitioner can also not show that appellate counsel's failure to bring an underlying claim of ineffective assistance of trial counsel was unreasonable or led to any prejudice.  Mr. Klein testified at the state habeas hearing that his framing of the similar transactions evidence claim was a strategic decision because he did not think that an ineffective assistance claim was strong enough.  (Doc. no. 8-4, p. 29.)  This decision is reasonable given the difficulty of satisfying both prongs of Strickland on a similar claim as compared to directly attacking the same issue.  In addition, there was no prejudice from this decision by appellate counsel because the ineffective assistance claims had no merit as outlined above.  Thus, the state habeas court's decision finding that there was no ineffective assistance of appellate counsel was not an unreasonable application of Strickland, and Petitioner's argument does not present a basis for relief.

**b.      Failure to File a Motion for Reconsideration.**

Petitioner also argues that Mr. Klein was deficient in not filing a motion for reconsideration before the appellate court, even though Mr. Klein did file a petition for a writ of certiorari before the Georgia Supreme Court.  (Doc. no. 2, pp. 85-88; doc. no. 8-4, p. 28.) Petitioner argues that the appellate court would have reconsidered his claims of error as to

the admission similar transactions evidence on the merits in light of <u>Whitehead v. State</u>, 695 S.E.2d 255 (2010) because it overturned the repetitive objection rule. <u>Id.</u>

Although Petitioner is correct that <u>Whitehead</u> overturned Georgia law requiring a pre-trial objection and renewal at trial to properly object to similar transaction evidence, Petitioner suffered no prejudice from counsel's failure to file a motion for reconsideration, and the state habeas court did not apply <u>Strickland</u> unreasonably. As discussed above and in *supra* § B.2, the trial court did not incorrectly admit the similar transactions evidence as it fit the criteria for admission under Georgia law. Because this evidence was correctly admitted, any motion for reconsideration would have led to the same outcome experienced in the initial appeal, denial. In addition, Mr. Klein actually sought review of the appeals court decision by filing a petition for a writ of certiorari. (<u>See</u> doc. no. 8-4, p. 28.) Thus, Petitioner suffered no prejudice from appellate counsel's failure to file a motion for reconsideration, and the state habeas court did not apply <u>Strickland</u> unreasonably in denying this claim.

### D. Pursuant to AEDPA, This Court Defers to the State Court's Decision Denying Petitioner's Confrontation Clause Claim in Ground Two.

In Ground Two, Petitioner contends the trial court violated his Sixth Amendment right to confront the witnesses against him when the interviews of the victims were introduced at trial, and he was unable to cross-examine the victims at the time the statements were made. (Doc. no. 2, pp. 35-39.) The state habeas court found that this claim was decided adversely to Petitioner on appeal and could not be relitigated absent an intervening change in the facts or law. (Doc. no. 8-2, p. 12.) The appellate court denied this claim because Petitioner was able to confront the child witnesses in court. <u>Snider</u>, 695 S.E.2d at

389.

The Confrontation Clause to the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In <u>Crawford v. Washington</u>, 541 U.S. 36, 68-69, (2004), the Supreme Court held, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Thus, the prosecution may not introduce "testimonial" hearsay against a criminal defendant, regardless of whether such statements are deemed reliable, unless the defendant has an opportunity to cross-examine the declarant, or unless the declarant is unavailable and the defendant had prior opportunity for cross-examination. <u>Id.</u> at 53. However, the Court reiterated in <u>Crawford</u> that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." <u>Id.</u> at 59 n.9; <u>see</u> <u>United States v. Stepherson</u>, 152 F. App'x 904, 907 (11th Cir. 2005).

Here, the state appellate court found that all three child witnesses testified at trial and were subject to thorough and sifting cross-examination. <u>Snider</u>, 695 S.E.2d at 388-89. The appellate court also held that under <u>Reynolds</u>, 363 S.E.2d. at 250, an opportunity to cross-examine the witnesses at the time the statements were made was unnecessary if the witnesses were subject to cross-examination at trial, also citing <u>Crawford</u>. Because the appellate court clearly applied the standards identified in <u>Crawford</u>, its decision is not contrary to established Supreme Court precedent. The appellate court's decision is also not an unreasonable application of <u>Crawford</u> because <u>Crawford</u> does not place any limits on the admission of

testimonial hearsay once the witness is subject to cross-examination in court. Id. at 59 n.9. Because the record reveals all three child witnesses were subject to cross-examination at trial (doc. no. 8-4, pp. 132-56; doc. no. 8-5, pp. 1-11; doc no. 8-6, pp. 46-53), the appellate court's decision was not contrary to and was, in fact, a correct application of Crawford. Thus, the decision is entitled to deference, and Petitioner's claim in Ground Two should be denied.

> **E. Pursuant to AEDPA, This Court Defers to the State Court's Decision Denying Petitioner's Due Process Claim in Ground Three.**

In Ground Three, Petitioner alleges that his due process rights under Holmes v. South Carolina, 547 U.S. 319 (2006) were violated when he was prevented from presenting evidence that P.H.'S father was the actual perpetrator of the crimes. (Doc. no. 2, pp. 40-52.) The evidence that allegedly shows the guilt of P.H.'s father is an instance when P.H.'s father showed Che. T. a pornographic video of anal sex and told him that anal sex with a woman was okay. (Id. at 47.) Petitioner also alleges that P.H.'s father was a suspect when the Georgia Department of Family and Children Services ("DFCS") first began investigating the incident. (Id. at 46-47.) The state habeas court found that these issues were decided adversely to Petitioner on appeal and could not be relitigated absent an intervening change in the facts or law. (Doc. no. 8-2, p. 12.) The appellate court denied this claim on the grounds that the evidence did not sufficiently connect P.H.'s father to the crimes. Snider, 695 S.E.2d at 389.

The Supreme Court held in Holmes that "[w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of

evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Holmes</u>, 547 U.S. at 326. In <u>Holmes</u>, the trial court did not allow the defendant to present evidence of third party guilt because the evidence did not raise a reasonable inference as to the defendant's innocence in light of the strong evidence of the defendant's guilt presented by the prosecution, particularly the forensic evidence in the case. <u>See id.</u> at 328-29. <u>Holmes</u> held that it was unconstitutional to exclude a defendant's potentially exculpatory evidence based on the strength of the prosecution's case, if fully credited. <u>Id.</u> at 330.

Here, <u>Holmes</u> does not help Petitioner because the alleged exculpatory evidence was not excluded on an arbitrary basis, but rather a valid basis under Georgia law. Georgia law at the time Petitioner was convicted required the evidence to be proof that "directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible . . . ." <u>Bradford v. State</u>, 420 S.E.2d 4, 6 (Ga. Ct. App. 1992). The state appellate court held that there is "simply no logical connection" between the evidence sought to be admitted and the crimes Petitioner was convicted of. <u>Snider</u>, 695 S.E.2d at 389. The state appellate court also cited <u>Holmes</u> in making this determination. <u>Id.</u>

The state appellate decision, in citing <u>Holmes</u> and applying it correctly, was not contrary to or an unreasonable application of <u>Holmes</u>. <u>Holmes</u> did not abrogate traditional state law evidentiary rules, <u>see</u> 547 U.S. at 326, and the appellate court correctly applied a Georgia evidentiary law that limited evidence of third party guilt that would only serve to

cast bare suspicion upon others. In applying the rule, the appellate court correctly based its reasoning on the lack of logical connection that the evidence had to the crime, not on the strength of the prosecution's case. Indeed, the evidence that P.H.'s father showed Che. T. an erotic video of heterosexual conduct between adults and that he was initially suspected by DFCS of molesting Che. T. and Cha. T., prior to any disclosure by either child, does not connect P.H.'s father in anyway with the molestations. Petitioner does not allege that DFCS actually had anything other than suspicions about P.H.'s father, the very thing the evidentiary rule is designed to prevent. (See doc. no. 2, pp. 40-52.) The evidence that P.H.'s father showed Che. T. inappropriate videos also does not connect him with the molestations in anyway, especially given the other evidence about when and where the molestations occurred. Accordingly, the state appellate decision was not contrary to or an unreasonable application of Holmes, and Petitioner is not entitled to relief on Ground Three.

IV.    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 30th day of July, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA